IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ADAM BEECH, *et al.*, | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
| v. | )   CIVIL ACTION 14-0241-WS-B |
| | ) |
| FV WISHBONE, her tackle, furniture, | ) |
| apparel, equipment, and appurtenances, | ) |
| etc., *in rem*, | ) |
| | ) |
|    Defendant. | ) |

**ORDER**

     This closed matter comes before the Court on a flurry of post-judgment motions, including Skipper's Landing, Inc.'s Motion for Discharge of Vessel Release Bond (doc. 76), Skipper's Landing, Inc.'s Motion to Tax Costs (doc. 77) and Plaintiffs' Motion to Alter or Amend Judgment (doc. 78). All parties have had a full and fair opportunity to be heard on each of these Motions.

**I.    Motion to Alter or Amend Judgment.**

     On June 15, 2015, the undersigned entered an Order (doc. 74) granting summary judgment in favor of defendant and dismissing plaintiffs' maritime lien claims against the *in rem* defendant, the F/V WISHBONE. The June 15 Order concluded that plaintiffs' claims were properly dismissed "for the separate, independent reasons that (i) plaintiffs were not strangers to the Vessel and therefore were not eligible to hold maritime lien claims against it, and (ii) even if plaintiffs were valid lienholders, their liens were barred by laches because plaintiffs failed to exercise reasonable diligence in preserving those liens, to the detriment of a bona fide purchaser without notice." (Doc. 74, at 22.)

     Plaintiffs, Adam Beech, Tenley Warhurst and Kris Leith, have filed a Motion to Alter or Amend Judgment (doc. 78), in which they assert that "[t]he court erred in its determination concerning stranger to the vessel – joint venture status." (Doc. 80, at 1.) This Motion is due to be denied for at least three distinct reasons.

First, movants neither identify nor conform their filing to the legal standard governing motions to reconsider. Presumably, plaintiffs' Motion is brought pursuant to Rule 59(e), Fed.R.Civ.P. As a matter of well-settled law, "[t]he only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact." *United States v. Marion*, 562 F.3d 1330, 1335 (11th Cir. 2009) (citation and internal marks omitted); *see also Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (similar). Authority is legion for the proposition that motions to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) (citation omitted).[1] Rule 59(e) does not afford an unsuccessful litigant "two bites at the apple." *American Home Assur. Co. v. Glenn Estess & Associates, Inc.*, 763 F.2d 1237, 1239 (11th Cir. 1985). Nor are such motions properly filed "as a kneejerk reaction by a dissatisfied federal court loser." *Lee v. Thomas*, 2012 WL 3137901, *2 (S.D. Ala. Aug. 1, 2012).[2] "They are neither appeal substitutes nor a 'dry run' to test arguments in anticipation of a forthcoming appeal." *Id.*

---

[1] *See also Smith v. Ocwen Financial*, 2012 WL 3758378, *2 (11th Cir. Aug. 30, 2012) ("A motion for reconsideration cannot be used to relitigate old matters, raise arguments, or present evidence that could have been raised prior to the entry of judgment.") (citation omitted); *Richardson v. Johnson*, 598 F.3d 734, 740 (11th Cir. 2010) (similar); *Kight v. IPD Printing & Distributing, Inc.*, 2011 WL 2015055, *1 (11th Cir. May 24, 2011) (motion for reconsideration properly denied where movant "merely attempted to relitigate old matters and presented evidence that could have been raised prior to the entry of judgment"); *Morton v. Astrue*, 2010 WL 2130613, *3 (11th Cir. May 27, 2010) ("In his motion to alter or amend judgment, … Morton merely attempted to reargue factual issues previously decided by the district court. The district court therefore did not abuse its discretion in denying the motion."); *Dyas v. City of Fairhope*, 2009 WL 5062367, *3 (S.D. Ala. Dec. 23, 2009) ("Motions to reconsider … do not exist to permit losing parties to prop up arguments previously made or to inject new ones, nor to provide evidence or authority previously omitted. They do not, in short, serve to relieve a party of the consequences of its original, limited presentation.").

[2] *See also Hughes v. Stryker Sales Corp.*, 2010 WL 2608957, *2 (S.D. Ala. June 28, 2010) (rejecting notion that motions to reconsider "are appropriate whenever the losing party thinks the District Court got it wrong," but finding that they are "an extraordinary remedy" that must be "employed sparingly") (citations omitted); *Garrett v. Stanton*, 2010 WL 320492, *3 (S.D. Ala. Jan. 18, 2010) ("Far too often, litigants operate under the flawed assumption that any adverse ruling on a dispositive motion confers upon them license … to relitigate issues that have already been decided, to champion new arguments that could have been made before, and otherwise to attempt a 'do-over' to erase a disappointing outcome. This is improper.").

The "stranger to the vessel" argument was the centerpiece of Skipper's Landing's Motion for Summary Judgment. Notwithstanding the prominent treatment of this theory in the Rule 56 Motion, plaintiffs elected not to address it in their response brief. The Court specifically noted this omission – and its potentially severe consequences – in the June 15 Order. (Doc. 74, at 11 n.11.) Having been given a reasonable opportunity to raise any arguments and issues they wished concerning the "stranger to the vessel" doctrine during summary judgment briefing, and having chosen to remain silent, plaintiffs cannot now employ Rule 59(e) to obtain a second bite at the apple merely because they have changed their minds. Stated differently, the arguments that plaintiffs now make concerning the "stranger to the vessel" doctrine were available during summary judgment briefing, yet plaintiffs chose not to present them. Plaintiffs must bear the consequences of that decision. A Rule 59(e) Motion is not a "do-over" procedure authorizing movants to present arguments that (armed with the benefit of hindsight) they now wish they had raised previously, but did not. Simply put, had Beech, Warhurst and Leith wished to contest application of the "stranger to the vessel" principle to their circumstances, they could and should have done so before summary judgment was entered. It is too late to do so now.

Second, even if plaintiffs had properly presented their "stranger to the vessel" argument at this time, their Rule 59(e) Motion would still fail because it hinges on an incorrect reading of applicable substantive law. According to plaintiffs, "[a] showing of control, which was not made, is the key to a determination of joint venture status to demonstrate a claimant was not a stranger to the vessel." (Doc. 80, at 1-2.) Thus, plaintiffs posit, they could not have been classified as joint venturers with respect to the M/V WISHBONE unless they had "the right to determine when it was used for charter fishing, rates and charges, whom to hire, or similar details." (*Id.* at 1.) This is not an accurate statement of circuit precedent. Indeed, the *Sasportes* case, on which plaintiffs purport to rely, explains that "these elements cannot be applied mechanically. **No one aspect of the relationship is decisive**." *Sasportes v. M/V Sol de Copacabana*, 581 F.2d 1204, 1208 (5th Cir. 1978) (emphasis added). More recently, the Eleventh Circuit has emphasized that "[t]he factors listed by the *Sasportes* court are not a checklist. They are only signposts, likely indicia, but not prerequisites." *Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir. 1991). The *Fulcher's Point* court elaborated that "we look to the whole relationship to determine whether or not the facts support the conclusion that a joint venture existed." *Id.* So unambiguous is the Eleventh

Circuit's stance on the subject that *Fulcher's Point* even reiterated that "the factors that indicate the existence of a joint venture do not have to be met point for point." *Id.* at 213. In their Rule 59(e) Motion, plaintiffs would isolate one factor (the right of control) in a vacuum to the exclusion of all others, in derogation of these binding authorities. The June 15 Order properly considered <u>all</u> of the *Sasportes* factors collectively and examined the whole relationship between each plaintiff and the M/V WISHBONE, just as the Eleventh Circuit has instructed. As such, the Court cannot agree with plaintiff's assertion that the June 15 Order erred in its application of the "stranger to the vessel" doctrine, much less that any such error might warrant relief within the narrow confines of Rule 59(e).

Third, even if plaintiffs could properly package their "stranger to the vessel" arguments for the first time in a Rule 59(e) Motion, and even if such arguments did not misapply binding precedent, their Motion would not succeed. The June 15 Order granted summary judgment for two independent reasons, to-wit: (i) plaintiffs were not strangers to the vessel, and (ii) their claims were barred by laches. Even if their Rule 59(e) Motion were to succeed in challenging the first of those grounds, plaintiffs would not be entitled to relief because their Motion does not address the second. In other words, the result of the June 15 Order (*i.e.*, entry of summary judgment in favor of the *in rem* defendant and dismissal of plaintiffs' claims in their entirety) would remain unchanged, even if plaintiffs could properly raise "stranger to the vessel" arguments now (which they cannot) and even if those arguments had merit (which they do not).

For all of these reasons, Plaintiffs' Motion to Alter or Amend Judgment (doc. 78) is **DENIED**.

**II.    Motion to Tax Costs.**

In a separate Motion, Skipper's Landing requests that this Court tax as costs the sums it spent on the Vessel Release Bond in this case. At the inception of this litigation, plaintiffs obtained an Order (doc. 2) and Warrant (doc. 3) for arrest of the F/V WISHBONE, and the U.S. Marshals Service served the Vessel on the afternoon of May 30, 2014. (Doc. 11.) The next day, Skipper's Landing appeared in this action and filed an Emergency Motion for Release of Vessel (doc. 7), predicated on the fact that the F/V WISHBONE is a charter fishing boat that had been reserved by various parties for the nine-day red snapper fishing season to commence on June 1, 2014. Plaintiffs repeatedly opposed the Vessel's release. (Docs. 8, 13.) On June 3, 2014, the parties filed a Joint Motion to Release Vessel (doc. 14), conditioned on Skipper's Landing

posting bond in the amount of $108,000, which Skipper's Landing achieved via a surety, FCCI Insurance Company. (Doc. 15.) In order to obtain and maintain the Bond, Skipper's Landing paid a premium of $1,080 in October 2014, and a renewal premium of $1,080 on June 1, 2015. (*See* Doc. 77-1.)

In its Motion to Tax Costs, Skipper's Landing requests that the $2,160 in bond premiums be taxed as costs against plaintiffs. No other costs are referenced or sought in the Motion. Significantly, movant does not base this Motion on the general cost-taxing statute found at 28 U.S.C. § 1920; rather, it invokes 28 U.S.C. § 1919, which provides as follows: "Whenever any action or suit is dismissed in any district court … for want of jurisdiction, such court may order the payment of just costs." *Id.* Skipper's Landing reasons that the June 15 Order found that plaintiffs did not hold valid maritime liens against the F/V WISHBONE, equates that finding with a determination that jurisdiction was lacking, and posits that the bond premiums are "just costs" under these circumstances.

As an initial matter, Skipper's Landing has not made a persuasive showing that § 1919 is even applicable here. By its terms, § 1919 comes into play only when a district court dismisses an action "for want of jurisdiction." The June 15 Order made no finding that this Court lacked subject matter jurisdiction to hear or decide plaintiffs' claims on the merits; to the contrary, it expressly adjudicated the merits and decided the validity of those claims. Moreover, this ruling was not made pursuant to a Rule 12(b)(1) motion or any jurisdictional concerns raised *sua sponte*. As pleaded, plaintiffs' claims for enforcement of maritime liens lay within the heartland of federal admiralty jurisdiction.[3] The Court's determination on summary judgment was that plaintiffs' claims for enforcement of maritime liens were meritless, not that a lack of federal

---

[3] *See, e.g., Crimson Yachts v. Betty Lyn II Motor Yacht*, 603 F.3d 864, 868 (11th Cir. 2010) ("An *in rem* admiralty proceeding requires as its basis a maritime lien. … An *in rem* suit against a vessel is … distinctively an admiralty proceeding, and is hence within the exclusive province of the federal courts.") (citations omitted); *E.S. Binnings, Inc. v. M/V Saudi Riyadh*, 815 F.2d 660, 662 n.2 (11th Cir. 1987) ("Enforcement of a maritime lien through an *in rem* proceeding against a vessel such as the action involved in the present case can be maintained only within the district court's admiralty jurisdiction."), *abrogated on other grounds by Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991); *Craddock v. M/Y The Golden Rule*, --- F. Supp.3d ----, 2015 WL 2412354, *4 (S.D. Fla. May 20, 2015) ("enforcement of a maritime lien is the exclusive jurisdiction of federal courts sitting in admiralty").

subject matter jurisdiction necessitated dismissal of this action antecedent to reaching the merits. It is thus far from clear that Skipper's Landing may properly invoke § 1919 in this procedural posture.[4]

Besides, Skipper's Landing's efforts to use § 1919 to bypass the outer limits of the cost statute found at 28 U.S.C. § 1920 (under which the Bond premiums plainly would not be taxable) are in conflict with the purpose and spirit of § 1919. "Section 1919 traces its roots to an 1875 congressional act that altered the common law rule that a court lacking jurisdiction had no power to award fees or costs." *Otay Land Co. v. United Enterprises Ltd.*, 672 F.3d 1152, 1156 (9th Cir. 2012).[5] In other words, § 1919 was designed to provide a mechanism for defendants to obtain an award of costs after lawsuits brought against them were dismissed for want of jurisdiction, because no such mechanism would otherwise exist. Skipper's Landing has not

---

[4] In so observing, the undersigned is cognizant of the intertwined nature of the jurisdictional and merits issues presented. As the Eleventh Circuit has recognized, "[w]hether maritime jurisdiction exists is a question anterior to, although often coincident with, the question of whether the plaintiff has a maritime lien." *Crimson Yachts*, 603 F.3d at 867 n.1 (citation omitted). If there is no maritime lien, then there is no *in rem* jurisdiction. *See id.* at 868 ("Federal district courts obtain *in rem* jurisdiction over a vessel when a maritime lien attaches to it."). Thus, the determination in the June 15 Order that plaintiffs were not strangers to the vessel and therefore could not hold maritime liens against the F/V WISHBONE necessarily implicated jurisdictional issues. Stated differently, the June 15 Order was both a merits ruling (*i.e.*, a determination that plaintiffs had no meritorious claims) and – implicitly – a jurisdictional ruling (*i.e.*, a determination that no maritime liens actually attached to the WISHBONE because plaintiffs held no valid maritime liens, such that no *in rem* jurisdiction existed). But Skipper's Landing has identified neither authorities nor reasoning for the proposition that § 1919 was intended to apply to this sort of intertwined merits/jurisdiction disposition, as opposed a threshold Rule 12(b)(1) dismissal (antecedent to reaching the merits) on the grounds that federal subject matter jurisdiction was lacking. The Court will not construe § 1919 in such an expansive manner absent a showing that either (i) that is what Congress intended, or (ii) that is what other district courts have done. Skipper's Landing has shown neither.

[5] *See also Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 387, 4 S.Ct. 510, 28 L.Ed. 462 (1884) ("These provisions were manifestly designed to avoid the application of the general rule, which, in cases where the suit failed for want of jurisdiction, denied the authority of the court to award judgment against the losing party, even for costs."); *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Electronics, Inc.*, 179 F.R.D. 328, 334 (N.D. Ala. 1998) ("this Court's authority to even consider the awarding of costs in cases dismissed for want of jurisdiction is rooted in Section 1919 for the common law forbade any such award by courts") (citations omitted).

argued (and could not reasonably argue) that the Clerk of Court could not tax costs in this case pursuant to § 1920 or Rule 54(d)(1), Fed.R.Civ.P.  To the contrary, Skipper's Landing could have submitted a bill of costs under those provisions.  It's just that Skipper's Landing chafes against the categorical limits inherent in § 1920, which unquestionably would not allow taxation of bond premiums as costs.[6]  On that basis, Skipper's Landing seeks to achieve an end run around those limits and expand its remedy by invoking § 1919.  Movant cites no authority, and the Court has found none, supporting the proposition that § 1919 was intended to provide – or has ever been construed as providing – a second, supplemental, broader means of cost taxation for a party that would be entitled to recover costs as a prevailing party under § 1920 and Rule 54(d).  By overreaching to circumvent the clear limits of § 1920, Skipper's Landing is not utilizing § 1919 in a just and equitable manner.  For that reason, the Court exercises its discretion under that statute to decline to award costs.  *See Otay Land*, 672 F.3d at 1157 (application of § 1919 requires analysis of "whether an award of costs is just and equitable").

Examination of other relevant factors warrants the same conclusion.  For example, courts applying § 1919 have considered the strength of the plaintiff's jurisdictional claim and the reasonableness of the plaintiff's litigation conduct.[7]  Without question, plaintiffs in this cause had a plausible basis for asserting the existence of federal jurisdiction, to-wit: their contention that their provision of supplies and services to the F/V WISHBONE gave rise to a maritime lien, enforcement of which supported admiralty jurisdiction.  Moreover, the Court has no evidence before it, and no reason to believe, that plaintiffs behaved in a vexatious or frivolous manner at

---

[6] Movant acknowledges as much by conceding that "bond premiums are not among the listed items in Standing Order No. 13 ….  Nor does a bond premium fall within the list of taxale costs set forth in Title 28, U.S.C. § 1920."  (Doc. 77, at 2.)

[7] *See, e.g., Otay Land*, 672 F.3d at 1158 (in § 1919 analysis, "[w]e agree that the strength of the plaintiff's jurisdictional claim is a legitimate consideration"); *Hygienics Direct Co. v. Medline Industries, Inc.*, 33 Fed.Appx. 621, 625-26 (3rd Cir. Apr. 8, 2002) (finding no abuse of discretion where "the District Court determined that costs should not be awarded to the defendants because Hygienics had plausible grounds for asserting the existence of federal jurisdiction and Hygienics did not act in a vexatious or frivolous manner") (internal quotation marks omitted).

any time following the inception of this lawsuit.[8]  Also significant in the Court's assessment of the equities is Skipper's Landing's counsel's candid admission that he "was unable to find any case precedent in which the premium for a bond posted for the release of a vessel was taxed for costs." (Doc. 81, at 3.)[9]  This fact reinforces the point that Skipper's Landing is requesting an extraordinary form of relief by pushing for taxation of costs falling substantially outside the traditional, conventional categories authorized by law, without demonstrating how it would be unfair or inequitable for Skipper's Landing to bear the costs of its own bond premiums, just like every other vessel owner does in every other ship seizure case where the plaintiff's maritime lien claims are ultimately rejected.

An award of costs under § 1919 is never mandatory, but is instead left to the district court's discretion.  *See, e.g., Religious Technology Center v. Liebreich*, 98 Fed.Appx. 979, 986-87 (5th Cir. May 10, 2004) ("There is nothing in § 1919, however, that *requires* such an award: Orders under this statute are purely *permissive*.") (footnote omitted).  For all of the foregoing reasons, the Court exercises its discretion not to tax costs against plaintiffs for the sums spent by Skipper's Landing on the vessel release bond.

**III.    Motion for Discharge of Vessel Release Bond.**

Finally, Skipper's Landing moves for discharge of the vessel release bond.  Pursuant to Supplemental Rule E(5)(a), Skipper's Landing posted a Vessel Release Bond (doc. 15) on June 3, 2014, in the amount of $108,000, or twice the value of plaintiffs' claims asserted herein.  More

---

[8]     The Court recognizes that Skipper's Landing imputes nefarious motivation to the timing of plaintiffs' filing of their Complaint and ensuing arrest of the F/V WISHBONE, which occurred just two days before commencement of the nine-day red snapper fishing season.  (*See* doc. 77, at 2; doc. 63, at 4.)  By the time Skipper's Landing was able to make arrangements for posting a bond and releasing the vessel, three days of that snapper season had been lost, with resulting charter cancellations.  Undoubtedly, the timing of the vessel's seizure was both unfortunate and detrimental to Skipper's Landing's business; however, no evidence been presented to suggest that plaintiffs acted intentionally or spitefully in this regard, or that the chronology was anything more than a regrettable coincidence.

[9]     Contrary authorities exist, albeit decided in the context of § 1920 rather than § 1919.  *See generally Oldendorff Carriers GmbH & Co. KG v. Grand China Shipping (Hong Kong) Co. Ltd.*, 2013 WL 5424956, *2 (S.D. Tex. Sept. 26, 2013) ("The great weight of authority establishes that because bond premiums are not listed in the statute, they are unrecoverable as costs.").

than a month has elapsed since the filing of the Motion for Discharge of Vessel Release Bond (doc. 76) on June 17, 2015, with no objection or opposition articulated by plaintiffs. Accordingly, for cause shown, the Vessel Release Bond is hereby **discharged**. Skipper's Landing, Inc. is **discharged** as principal, and FCCI Insurance Company is **discharged** as surety.

### IV. Conclusion.

For all of the foregoing reasons, it is **ordered** as follows:

1. Plaintiffs' Motion to Alter or Amend Judgment (doc. 78) is **denied**;
2. Skipper's Landing's Motion to Tax Costs (doc. 77) is **denied**; and
3. Skipper's Landing's Motion for Discharge of Vessel Release Bond (doc. 76) is **granted**, and the Vessel Release Bond posted on June 3, 2014 (Skipper's Landing as principal, FCCI Insurance Company as surety) is hereby **discharged**.

DONE and ORDERED this 21st day of July, 2015.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE